**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4163
_____

COLGATE- PALMOLIVE COMPANY

v.

TANDEM INDUSTRIES; GYP'S MARKET; JAMES LAWSON; THOMAS
MULHEARN; RICHARD FLOWER

RICHARD FLOWER,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court  No. 3-07-cv-01709
District Judge: The Honorable A. Richard Caputo


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 17, 2012


Before: SMITH and FISHER, *Circuit Judges*
and STEARNS, *District Judge**


(Filed:  June 5, 2012)

_____

* The Honorable Richard G. Stearns, United States District Judge for the United
States District Court of Massachusetts, sitting by designation.

1

———————————

OPINION

———————————

SMITH, *Circuit Judge.*

Richard Flower appeals from a grant of summary judgment holding him liable to his former employer, Colgate-Palmolive Company ("Colgate"), for a breach of fiduciary duty. We will affirm.[1]

Defendant Richard Flower was a 30-year employee of Plaintiff Colgate. He retired in August 2006, pursuant to a voluntary early retirement plan.[2] Flower's job involved marketing Colgate products. Flower was responsible for ensuring that retailers stocked and prominently displayed Colgate products, for monitoring retailers' inventory, and for encouraging retailers to restock Colgate products

———————————

[1] The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. We note that on September 28, 2010, the Clerk identified a potential jurisdictional defect due to claims still pending against the Tandem Defendants. The parties advised the Court that a settlement agreement was nearly finalized that would resolve the jurisdictional defect, and the Clerk referred the issue to the merits panel. The District Court docket indicates that an agreement was reached, with the District Court entering judgment against Tandem on all remaining claims on January 4, 2011. We therefore conclude that the jurisdictional defect has been resolved, and we have jurisdiction over this appeal.

[2] As appropriate on summary judgment, wherever there is a genuine dispute of material fact, we recite the facts in the light most favorable to Flower and draw all inferences in his favor. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 127 (3d Cir. 2001); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

2

through their normal suppliers when they ran low. As part of Colgate's effort to market its products, Flower was empowered to issue incentive payments through Colgate's Total Account Management ("TAM") system. These payments were made to retailers to incentivize prompt restocking and prominent placement of Colgate products on retail shelves. These payments were sometimes tied to specific wholesalers or distributors and, in those cases, were to be paid only to retailers buying product from those wholesalers or distributors.

Tandem Industries / Gyp's Market ("Tandem") is a store stocking Colgate products. Starting in 1996, Flower entered into two arrangements with Tandem. First, Tandem agreed to take second-hand Colgate products (items returned by other retailers, left over from trade shows, etc.), sort through them, and sell those they could. (A72-73) Flower claims this was product that Colgate refused to take back, and that he was told to dispose of it however he could. (A1341-42) Flower viewed it as his property. (A1342) Flower acknowledges that he sold "his" product to Tandem at full price (list price minus any Colgate promotions), with the proceeds going to Flower, not Colgate. (A1344-45) In total, Tandem paid Flower approximately $25,000 over ten years.

At the same time, Tandem was receiving regular payments from Colgate in the form of checks authorized by Flower through the TAM system. These payments totaled $674,070.55. Colgate avers that these checks were drawn on

3

accounts earmarked as incentive payments for retailers purchasing products from specific large distributors, namely AmerisourceBergen ("Amerisource") and Weis, and that Tandem never purchased from these distributors. Tandem likewise admits that it never purchased from these distributors. Flower admits that paying Tandem from these accounts would have been improper had he known Tandem was obtaining its products from other distributors. (A1355, A1369-71) But Flower says that he verified Tandem was stocking Colgate products by regularly checking Tandem's inventory. (A1316-17, A1320-21, A1349, A1359) He also claims that he saw products in Tandem's inventory that were exclusively available from Amerisource. (A1319-20) He suggests that further confirmation of the products' precise origin would have been impossible because retailers and distributors treat this information as confidential. (A1320, A1370) Flower admits that he never asked Tandem where it was sourcing its products (A1349), even though he asked other retailers for similar information (A1331).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] An issue of

---

[3] Rule 56 has since been revised, effective December 1, 2010. Judgment was entered against Richard Flower on the fiduciary duty count on April 9, 2009, at which time this language was still in effect.

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "We exercise plenary review over a District Court's grant of summary judgment[.]" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 n.6 (3d Cir. 2001).

Colgate has brought a breach of fiduciary duty claim against Flower. Under Pennsylvania law, employees owe a fiduciary duty to their employers. *See, e.g.*, *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. Ct. 2003). Flower disclaims a fiduciary duty to Colgate, but because the duty is inherent to the employer-employee relationship, it is not something he can merely reject. To hold Flower liable for a breach of fiduciary duty, it must be found that: (1) Flower negligently or intentionally failed to act in good faith and solely for the benefit of Colgate in all matters for which he was employed; (2) that Colgate suffered injury; (3) that Flower's failure to act solely for Colgate's benefit was a real factor in bringing about Colgate's injuries. *See Pa. Suggested Standard Civil Jury Instructions* § 6.210 (2011).

A fiduciary duty includes both a duty of loyalty – conducting the employer's business in the employer's best interest instead of one's own – and a duty of care – conducting the employer's business attentively and responsibly. *See Sylvester v. Beck*, 178 A.2d 755, 757 (Pa. 1962) ("There can be no doubt that an agent owes a

duty of loyalty to his principal and in all matters, affecting the subject of his agency, he must act with the utmost good faith in the furtherance and advancement of the interests of his principal."); *Garbish v. Malvern Fed. Sav. & Loan Ass'n*, 517 A.2d 547, 554 (Pa. Super. Ct. 1986) ("Because the relationship between the parties in this case was an agency relationship, appellant owed appellees a fiduciary duty and its conduct must be measured against the standard of care owed by a fiduciary."); Restatement (Third) of Agency § 1.01 cmt. g ("As agents, all employees owe duties of loyalty to their employers.").

Regarding Flower's sale of second-hand Colgate product to Tandem, there can be no question that Flower breached his fiduciary duty to Colgate. Misappropriating business which belongs to one's employer is a clear breach of the duty of loyalty. *See Borden v. Sinskey*, 530 F.2d 478, 489-90 (3d Cir. 1976) (explaining that usurping a corporate business opportunity is a violation of fiduciary duty). Flower sold Colgate product to Tandem for his own profit, thereby misappropriating business from his employer, failing to act in good faith, and breaching his fiduciary duty.

It is immaterial that Flower considered the product to be his own. Even assuming Flower was free to keep, use, and potentially give away the product in his possession, he was not free to sell it to Tandem. Those sales took the place of potential business that could have been done by Colgate. It is likewise immaterial

that these were second-hand products. In theory, second-hand goods could be considered a materially different product, such that Flower was not misappropriating business from Colgate. But no reasonable jury could find that to be the case here, because Flower sold these supposed leftovers to Tandem for full price (list price minus applicable promotions). (A1344-45)

Flower contends that his supervisors at Colgate were aware that he was selling these leftover products. We need not credit this contention, even on summary judgment. In Flower's July 2008 deposition, he made clear that he never discussed his dealings with Tandem with anyone at Colgate. (A1345) It is only in a September 2008 affidavit that Flower attempts to walk back these statements. (A248) But he offers no explanation for the contradiction between his deposition and his subsequent affidavit. The sham affidavit doctrine permits us to disregard his affidavit. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

Flower likewise breached his fiduciary duty in disbursing over $670,000 in Colgate incentive funds to Tandem. It is undisputed that these funds were intended only for retailers buying from particular distributors, and that Tandem did not purchase products from those distributors. Flower testified at length about the purpose of incentive payments and these accounts in particular. (A1317, A1352, A1354-56, A1369-71) He acknowledged that payments from them were intended

7

only for retailers sourcing products from particular distributors. (A1369-71) While Flower gave some details about how he verified the *quantity* of Colgate products stocked and sold by Tandem, he supplied virtually no information about how he verified the *suppliers*. The only evidence Flower gave to support his apparent belief that Tandem was buying from those distributors was his claim that Tandem carried some products exclusively distributed by Amerisource. (A1319-20, A1371) Flower provides no evidence at all to support a belief that Tandem was buying from Weis.

Flower testified that no one from Tandem told him that Tandem bought products from Amerisource or Weis. (A1371) He never demanded paperwork from Tandem to substantiate the incentive payments. He makes no claim that he recorded serial numbers or other information that could be used to track the products back to their distributors. He admits that he never even *asked* where Tandem was buying its products (A1349), despite asking other stores for similar information. (A1331) No reasonable jury could find that Flower was not – at a minimum – negligent in failing to take these basic steps to safeguard Colgate's interests. Flower failed to exercise due care in issuing checks to Tandem, failed to act in good faith, and breached his fiduciary duty to Colgate.

Flower offers a number of defenses. First, Flower claims that he was never trained in use of the TAM system. But never once during his extensive deposition

testimony does he claim that he issued the checks inadvertently, issued them from the wrong account, or otherwise made any technical mistake that would bear on our conclusion that he breached his duty of care.

Second, Flower claims that as account manager for Amerisource and Weis, he was often asked by employees in other states to issue checks through TAM for those accounts without verifying supplier information. (A1323) But even assuming his actions were proper in those situations (an issue we do not decide), they were clearly improper here. Flower directly interacted with Tandem's principals, issued to them over $670,000 in Colgate funds, and never once made any effort to confirm that those disbursements were appropriate.

Third, Flower claims that there was a practice at Colgate of issuing improper payments through the TAM system. His brief points to no record evidence supporting this assertion, merely citing vague statements from Flower's Answer to Colgate's Complaint. At deposition, Flower testified at length about how funds were earmarked for retailers buying from specific distributors, why that was important to business, and how the payments to Tandem would be improper if Tandem had not purchased from those distributors. (A1352, A1354-56, A1369-71) In light of this evidence and Flower's failure to substantiate his claims to the contrary, we need not credit those claims.

Fourth, Flower claims that neither retailers nor distributors would divulge with whom they were doing business, and so he could not ascertain the identity of suppliers. (A1320, A1370) Flower's assertion is belied by deposition testimony from one of Tandem's principals, indicating that Flower's predecessor required documentation for incentive payments. (A585-88) But we need not rely on that testimony. Even assuming Flower's assertion is true, Flower did not even *ask* Tandem about its distributors. (A1349) Flower admits that he asked other stores about their major suppliers. (A1331) He has provided no explanation for why he could not ask Tandem the same thing. Perhaps Tandem would have refused to divulge the information. But Flower's duty to his employer demanded no less.

Finally, Flower claims that files that had been kept on his employee laptop would exonerate him and insists that we should apply an adverse inference for Colgate's failure to produce the laptop and its files. The undisputed evidence shows that Colgate destroyed the data on the laptop shortly after Flower's retirement. When data is destroyed pursuant to normal recordkeeping practices (and in particular when it is destroyed in relation to a major event like an employee's retirement), no adverse inference is warranted.

We therefore conclude that the District Court correctly granted summary judgment against Richard Flower for breach of fiduciary duty. We will affirm.

10